[Civ. No. 16358. Fourth Dist., Div. One. Sept. 19, 1977.]

MICHAEL LYNN GRIFFITH, Plaintiff and Respondent, v.
BEVERLY JOYCE GIBSON, Defendant and Appellant.

## COUNSEL

Corbitt & Corbitt and Clarence Corbitt for Defendant and Appellant.

Michael Lynn Griffith, in pro. per., for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—Beverly Joyce Gibson appeals from that portion of a judgment granting petitioner Michael Lynn Griffith visitation rights

with his son. The six-year-old Michael was born out of wedlock to these parties. These parents have never married; the father does not fulfill any of the conditions set forth in Civil Code section 7004 giving rise to the rebuttable presumption he is the natural father of Michael.[1]

Both parents agree, however, Griffith is in fact the natural father. Griffith entered into agreement with the family support division of the district attorney's office providing for the support of the yet unborn child. The mother named him as the father on the birth certificate. The father has faithfully complied with the support agreement. Over the six intervening years he has attempted to visit with the child but has been frustrated. His duties in the military service require his presence in far places and a reluctance on the part of the mother to allow visitation have prevented any direct contact. The father, however, has sent Christmas and birthday cards and gifts over the years and has contacted the child on several occasions by telephone.

---

[1]Civil Code section 7004 provides as follows:

"(a) A man is presumed to be the natural father of a child if he meets the conditions as set forth in Section 621 of the Evidence Code or in any of the following subdivisions:

"(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court. [See former Evid. Code, § 661.]

"(2) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in the apparent compliance with law, although the attempted marriage is or could be declared invalid, and,

"(i) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce, or

"(ii) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation. [See former Civ. Code §§ 195 and 4453, as well as former Evid. Code, § 661.]

"(3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and

"(i) With his consent, he is named as the child's father on the child's birth certificate, or

"(ii) He is obligated to support the child under a written voluntary promise or by court order. [See former Civ. Code, § 215.]

"(4) He receives the child into his home and openly holds out the child as his natural child. [See former Civ. Code, § 230.]

"(b) Except as provided in Section 621 of the Evidence Code, a presumption under this section is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise under this section which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man."

The trial court found Griffith was not "a presumed natural father" as defined in section 7004 of the Civil Code; rather "a parent and child relationship exists between Petitioner, MICHAEL LYNN GRIFFITH, and [the boy]" as defined in section 7001 of the Civil Code. The court then determined the father was entitled to visitation privileges and ordered him to pay child support of $100 a month.

The mother contends a natural father must "meet one or more of the criteria under the Uniform Parentage Act section 7004 for the Court to declare the existence of a parent and child relationship." She argues Civil Code section 7004 establishes the presumptions necessary to create a parent and child relationship. By incorporating all the previous methods of legitimization into its provisions, section 7004 is intended by the Legislature to be *the exclusive method* of conferring upon a natural father parental rights including custody and visitation, which under previous law could be conferred only upon a natural father who had "legitimized" a child born out of wedlock.

Griffith admittedly does not come within the provisions of Civil Code section 7004 as a "presumptive natural father." Therefore concludes the mother, a parent and child relationship does not exist under Civil Code section 7001 and no rights of visitation accrue.

█ These arguments are without merit. A natural father need not be a presumptive father under Civil Code section 7004 in order to be entitled to visitation rights under Civil Code section 7010.[2]

█ Legislative intent is not to be ascertained from isolated parts or sections of a statute or act; rather "a specific provision should be

---

[2]Civil Code section 7010 provides as follows:

"(a) The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code.

"(b) If the judgment or order of the court is at variance with the child's birth certificate, the court shall order that a new birth certificate be issued as prescribed in Article 6 (commencing with Section 10450) of Chapter 8, of Division 9 of the Health and Safety Code.

"(c) The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. The judgment or order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement.

"(d) In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall consider all relevant facts."

construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized." (*Bowland* v. *Municipal Court,* 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].) We therefore look to the entire Uniform Parentage Act, not narrowly at section 7004 to find the legislative intent.

Under former section 200 of the Civil Code (repealed by the enactment of the Uniform Parentage Act) the mother of a minor child born out of wedlock has the right to the minor's custody to the exclusion of the natural father. Despite this statutory language, *Strong* v. *Owens,* 91 Cal.App.2d 336 [205 P.2d 48], affirmed the trial court's judgment granting custody of the child born of an unwed mother without prejudice to the right of the father to seek an order for visitation rights and requiring the mother to keep the father advised at all times as to the child's domicile. Said the court: "No reason has been advanced for the denial to the father of his right to visit his child and if he desires to do so he has a right to be admitted to see the infant at all convenient times." (*Strong* v. *Owens, supra,* 91 Cal.App.2d 336, 341.)

■ Under the Uniform Parentage Act (Civ. Code, § 7000 et seq., enacted Stats. 1975, ch. 1244) the "child and parent relationships" extend equally to every child and to every parent regardless of the marital status of the parent. All statutory references to "legitimacy" and "illegitimacy" are eliminated. The major premise of the act is to provide for substantive equality of children regardless of the marital status of the parents. The right-duty relationship existing between the parent and child are equalized without reference to the marital status of the parents, without regard to sex.[3]

Contrary to the mother's understanding, the Uniform Parentage Act provides not one but two methods of establishing the parent-child relationship. Section 7004, relied upon by the mother, sets out the factual circumstances which will give rise either to a conclusive presumption of parentage by the male (Evid. Code, § 621) or a rebuttable presumption arising from any of the four factual situations delineated in section 7004, subdivision (a)(1), (2), (3), or (4). These are, respectively, the rebuttable

---

[3]Civil Code sections 7001 and 7002 provide in pertinent part:
"7001. As used in this part, 'parent and child relationship' means the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship."
"7002. The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents."

presumptions of paternity from former Evidence Code section 661; Civil Code sections 195 and 4453 and Evidence Code section 661; Civil Code section 215; and Civil Code section 230.

The second method for determining the father-child relationship is by a legal action brought by the man alleging himself to be the father. Civil Code section 7006, subdivision (c) provides: "An action to determine the existence of the father and child relationship with respect to a child *who has no presumed father under section 7004 . . . may be brought by . . . a man alleged or alleging himself to be the father . . . .*" (Italics added.)

The judgment in the action brought under section 7006, subd. (c) determines the "existence . . . of the parent and child relationship . . . for all purposes . . . ." (Civ. Code, § 7010, subd. (a).) Such judgment "may contain" an order directed against the "appropriate party" concerning "visitation privileges with the child." (Civ. Code, § 7010, subd. (c).)

**(1b)** We therefore conclude the Uniform Parentage Act, sections 7006 and 7010, in clear and unmistakable language, grants a right to the father here to bring an action to establish the child-parent relationship and upon the determination of the existence of that relationship to secure an order compelling visitation privileges with the child provided, of course, it is "in the best interest of the child." (Civ. Code, § 7010, subd. (c).)

In the face of the clear, unmistakable, express language of Civil Code section 7010, subdivision (c) authorizing rights of visitation in Mr. Griffith as a person who has established the parent-child relationship under section 7006, subdivision (c) the mother asserts Civil Code sections 7017 and 197 as amended by the Uniform Parentage Act[4] reflect a legislative intent to limit visitation rights to a "presumptive father" only as defined by Civil Code section 7004, subdivision (a).

---

[4]Civil Code section 7017 provides in part:

"(a) *If a mother relinquishes or consents to or proposes to relinquish for adoption a child who has (1) a presumed father under subdivision (a) of Section 7004 or (2) a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the father shall be given notice of the adoption proceeding* and have the rights provided under Chapter 2 (commencing with Section 221), Title 2, Part 3, Division 1 of the Civil Code, unless the father's relationship to the child has been previously terminated or determined by a court not to exist or the father has voluntarily relinquished or consented to the adoption of such child.

. . . . . . . . . . .

"(d) If, after the inquiry, the natural father is identified to the satisfaction of the court, or if more than one man is identified as a possible father, each shall be given notice of

Neither section treats the issue here presented. Civil Code section 7017 defends the bounds of parental rights where the mother proposes to relinquish a child for adoption. The section authorizes a "petition to terminate the parental rights of the father." (Civ. Code, § 7017, subd. (b).) The section provides that a child having a "presumed father" may not be adopted without the consent of both parents except in specified circumstances.

The mother relies upon this language of section 7017, subdivision (d): "If the court finds that the man representing himself to be the natural father is a presumed father under subdivision (a) of Section 7004, then the court shall issue an order providing that the father's consent shall be required for an adoption of the child. In all other cases, *the court shall issue an order providing that only the mother's consent shall be required for adoption of the child.*" (Italics added.)

■ In analyzing these contentions we start with the familiar rule of statutory construction: a particular provision prevails over a general provision (*In re James M.,* 9 Cal.3d. 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33]) and a statute must be interpreted " 'according to the usual, ordinary import of the language employed.' " (*People* ex rel. *Younger* v. *Superior Court,* 16 Cal.3d 30, 43 [127 Cal.Rptr. 122, 544 P.2d 1322].) This father claims rights to visitation under Civil Code sections 7006, subdivision (c) and 7010, subdivision (c). The language of these sections, according to its usual, ordinary import, explicitly grants these rights to Mr. Griffith.

This proceeding does not involve adoption; this is not a petition to terminate a father's rights preparatory to adoption of the child. The explicit language of Civil Code section 7017, subdivision (d) treats with

the proceeding in accordance with subdivision (f). If any of them fails to appear or, if appearing, fails to claim custodial rights, his parental rights with reference to the child shall be terminated. If the natural father or a man representing himself to be the natural father, claims custodial rights, the court shall proceed to determine parentage and custodial rights in whatever order the court deems proper. *If the court finds that the man representing himself to be the natural father is a presumed father under subdivision (a) of Section 7004, then the court shall issue an order providing that the. father's consent shall be required for an adoption of the child. In all other cases, the court shall issue an order providing that only the mother's consent shall be required for the adoption of the child. . . .*" (Italics added.)

Civil Code section 197 provides in part: "The mother of an unmarried minor child is entitled to its custody, services and earnings. The father of the child, if presumed to be the father under subdivision (a) of Section 7004, is equally entitled to the custody, services and earnings of the unmarried minor. If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings."

parental rights as well as procedure on a proposed adoption. The legislative intent expressed in a section granting the mother the sole right to relinquish the child for adoption under certain circumstances is not germane, not logically related, to this action brought under Civil Code section 7006, subdivision (c).

Thus the plain meaning of section 7017, subdivision (d) indicates a legislative intent relevant to adoption proceedings. The plain, usual and ordinary import of the language of section 7010, subdivision (c) authorizes the grant to Mr. Griffith of visitation rights. The explicit grant of visitation rights to a natural father in section 7010, subdivision (c) prevail over the general inferences the mother would draw from section 7017, subdivision (d).

If the mother's contention is accepted, there appears a superficial conflict within Civil Code section 7017, subdivision (d) arising from mandatory words directing the court to determine the father's "parentage" and "custodial" rights when contrasted with the language directing the court to issue its order requiring only the mother's consent to the adoption unless the alleged father is a "presumptive father" under Civil Code section 7004, subdivision (a). This conflict, when raised in an appropriate case, will require resolution in the light of the manifest legislative purpose to equalize the rights and obligations of parents in relationship to their children without regard to sex, without regard to marital status. (Civ. Code, §§ 7001 and 7002.) Further, this conflict will require resolution in conformity with *Stanley* v. *Illinois,* 405 U.S. 645, 655 [31 L.Ed.2d 551, 560, 92 S.Ct. 1208, 1214-1215], which recognizes rights of constitutional dimension in the unwed father to his natural child. *Stanley* points out due process entitles an unwed father to a hearing on his fitness as a parent before his children are taken from him and proceedings which deny such opportunity to him are a denial of equal protection of the law.

Civil Code section 197 as amended by the Uniform Parentage Act does not purport to deal, either specifically or generally, with the rights of a man who alleges and proves himself to be the father under section 7006, subdivision (c). By its express language it deals with the rights of a "presumed father" under Civil Code section 7004, subdivision (a). The mother would repeal the specific express grant of rights under sections 7006, subdivision (c) and 7010, subdivision (c) by implication, by the silence of Civil Code section 197. This is not a good rule of statutory construction. There is a presumption against repeal by implication.

(*Warne* v. *Harkness,* 60 Cal.2d 579, 587, 588 [35 Cal.Rptr. 601, 387 P.2d 377].) The mother's argument with respect to Civil Code section 197 faces the same constitutional hurdle as does Civil Code section 7017, subdivision (d) if her interpretation is followed.

Further, if Civil Code section 197 is interpreted to prohibit visitation rights in Mr. Griffith the overall purpose of the Uniform Parentage Act is negated, an inequality in parental rights is created based on marital status and sex.

■ We conclude neither section 7017, subdivision (d) nor section 197 expresses any legislative intent contrary to that authority to grant visitation rights to a father in Mr. Griffith's status as found in Civil Code sections 7006, subdivision (c) and 7010, subdivision (c).

In her reply brief and for the first time in these proceedings the mother raises the issue of the "best interests of the child." She charges the trial court grant of visitation to the father was not predicated upon a finding of the best interests of the child. While the mother did not raise this issue before the trial court, we examine the question. ■ The best interests of the child must be given paramount consideration in any award of custody or visitation. (*Devine* v. *Devine,* 213 Cal.App.2d 549, 552, 553 [29 Cal.Rptr. 132].)

The father's uncontradicted evidence establishes a picture of fitness. He alleges in his pleadings that it is in the boy's "best interest that visitation rights with the father be granted." The mother did not contest this allegation. The findings of the court are silent as to the best interests of the child. Counsel for the mother did not request a finding on this issue.

■ The transcript of the proceedings of the trial court is part of the record here. We are permitted to review that evidence, that record, to determine if all necessary implied findings are supported by substantial evidence. (*Estate of Taylor,* 6 Cal.App.3d 16, 21 [85 Cal.Rptr. 474]; *In re Reyna,* 55 Cal.App.3d 288, 294 [126 Cal.Rptr. 138].) The mother had the burden of proof as to the father's unfitness. (Evid. Code, § 500; *In re Reyna, supra,* 55 Cal.App.3d 288, 295.)

Civil Code section 4601 provides: "Reasonable visitation rights shall be awarded to a parent unless it is shown that such visitation would be detrimental to the best interests of the child."

■ The mother here offered no evidence showing that such visitation would be detrimental to the best interests of the child. In fact, the evidence before the trial court authorizes an implied finding the father was fit; he was a concerned parent; he had remarried; he had attempted on many occasions to see, to visit, his son. The evidence before the trial court warrants the further conclusion the mother had prevented visitation "in hopes" it would force the father to marry her. Thus not only is there no clear showing the visitation would be detrimental to the child but rather, the facts impel the conclusion visitation would be in the child's best interests.

The trial court has "very extensive discretion" in determining visitation rights with a minor child. (*Bookstein* v. *Bookstein,* 7 Cal.App.3d 219 [86 Cal.Rptr. 495].) The record discloses no abuse of discretion.

Judgment affirmed.

Brown, (Gerald), P. J., and Rosado, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 17, 1977.

*Assigned by the Chairperson of the Judicial Council.