[Civ. No. 50638. Second Dist., Div. Four. Apr. 10, 1978.]

Adoption of MARIE R., a Minor.
RONALD K. et al., Petitioners and Appellants, v.
CHARLES K., Claimant and Respondent;
SCOTT R., et al., Claimants and Appellants.

## COUNSEL

Elaine B. Fischel for Petitioners and Appellants.

David Keene Leavitt for Claimants and Appellants.

Oliver W. Holmes, Jr., Bernie Fineman, Michael A. Aronoff and Richard J. Tuckerman for Claimant and Respondent.

**OPINION**

**KINGSLEY, J.**—The case comes before the court on a settled statement on appeal in lieu of both the reporter's and clerk's transcripts.

Ronald K., a young attorney, and his wife Jill are petitioners for adoption of Marie R., a baby born January 11, 1976. The baby's mother is Sheila R. and both Sheila's husband, Scott R., and respondent, Charles K., claim paternity.

Sheila and Scott were married January 8, 1976, three days before the birth of the baby, and the birth certificate lists Scott as the father. Immediately after birth, Sheila and Scott placed the baby with petitioners for adoption and the baby has lived with petitioners ever since she was two days old. Sheila and Scott do not now live together.

Over a year prior to the petition for adoption, Charles had filed a complaint to establish paternity. That action is still pending. Subsequent to the filing of the petition for adoption, petitioners filed and served on Charles a notice pursuant to Civil Code section 7017.

Sheila testified that she was not married to Charles and did not cohabit with him at the time of conception, and that Charles had not received the child into his family or into his home. The trial court decided to permit Charles to introduce evidence as to paternity purportedly pursuant to Civil Code section 197 as amended. Charles testified that he had intercourse with Sheila, that they were engaged, and that he wanted to keep the baby. Sheila testified that she had had intercourse with both Scott and Charles during the period of conception, that she let Charles assume he was the father of the baby, and that Charles was unemployed. Scott also testified to intercourse with Sheila during the period of conception. Both Sheila and Scott testified that they wanted the baby adopted by a stable, happily married couple.

Blood tests were inconclusive.

Charles had never actually seen the baby. He did not contribute to the baby's or Sheila's prenatal support or the expenses of birth, although he offered to do so. He also paid no support after birth.

The trial court found that Charles "constructively received the baby as his own, although actual receipt of the baby was prevented by the natural mother."

Claimants Sheila and Scott appeal from the court order which found that the petition for adoption could not proceed without Charles' consent, and which found that Charles is the presumed father who is legally entitled to custody of the child.

I

While the baby was conceived in 1975, prior to the effective date of the Uniform Parentage Act, that law was in effect at the time of the child's birth and at the time of the institution of the proceedings herein involved. We regard the case at bench as governed by the law as expressed by the present law, which is also the law applicable at the date of birth.

Under the present law, Civil Code section 224, as amended by California Statutes, 1975, chapter 1244,[1] permits an adoption with the sole consent of the mother except where a child has a "presumed" father as defined in section 7004[2] of the Civil Code. In the latter case the

[1]Section 224: "A child having a presumed father under subdivision (a) of Section 7004 cannot be adopted without the consent of its parents if living; however, if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents, and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of such child when able to do so, then the parent having custody alone may consent to such adoption, but only after the parent not having custody has been served with a copy of a citation in the manner provided by law for the service of a summons in a civil action that requires him or her to appear at the time and place set for the appearance in court under Section 227; failure of a parent to pay for the care, support and education of such child for such period of one year or failure of a parent to communicate with such child for such period of one year is prima facie evidence that such failure was willful and without lawful excuse; nor a child with no presumed father under subdivision (a) of Section 7004 without the consent of its mother if living; except that the consent of a father or mother is not necessary in the following cases:

"1. When such father or mother has been judicially deprived of the custody and control of such child (a) by order of the court declaring such child to be free from the custody and control of either or both of his parents pursuant to Chapter 4 (commencing with Section 232) of Title 2 of Part 3 of Division 1 of this code, or (b) by similar order of the court of another jurisdiction, pursuant to any law of that jurisdiction authorizing such order; or when such father or mother has, in a judicial proceeding in another jurisdiction, voluntarily surrendered his right to the custody and control of such child pursuant to any law of that jurisdiction provided for such surrender.

"2. Where such father or mother of any child has deserted the child without provision for its identification.

"3. Where such father or mother of any child has relinquished such child for adoption as provided in Section 224m; or where such father or mother has relinquished such child for adoption to a licensed or authorized child-placing agency in another jurisdiction pursuant to the law of that jurisdiction."

[2]Section 7004: "(a) A man is presumed to be the natural father of a child if he meets the conditions as set forth in Section 621 of the Evidence Code or in any of the following

consent of the father is also required. Section 7017 of the Civil Code, adopted as part of the same revision of our law, is to the same effect.

Since Charles, admittedly, has never been married to Sheila, the presumption contained in paragraphs (1), (2) and (3) of subdivision (a) of section 7004 are not herein involved. Charles' claim, and the trial court's decision, rest on the theory that he became a "presumed" father under paragraph (4) of subdivision (a) of that section—i.e., that he had received the child into his home and openly recognized it as his child. On the other hand, Scott may rely on paragraph (1) of subdivision (a) of that same section, since he and Sheila were married at the time of the child's birth.

The briefs discuss at some length cases decided under former section 230[3] of the Civil Code, which was repealed by the 1975 legislation. While

---

subdivisions:

"(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court.

"(2) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and,

"(i) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce; or

"(ii) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.

"(3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and

"(i) With his consent, he is named as the child's father on the child's birth certificate, or

"(ii) He is obligated to support the child under a written voluntary promise or by court order.

"(4) He receives the child into his home and openly holds out the child as his natural child.

"(b) Except as provided in Section 621 of the Evidence Code, a presumption under this section is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise under this section which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court degree establishing paternity of the child by another man."

[3]Old section 230 read as follows: "*The father* of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption." (Italics added.)

those cases have some limited value in interpreting that part of the language in new section 7004 that is the same as some of the language in former section 230, they are not controlling in the case at bench, since section 230, by its terms, presupposed the fact of paternity.

Prior to the adoption of the Uniform Parentage Act, legislation and case law in this field were concerned with establishing the status of legitimacy, from which status various rights flowed. However, the new legislation abolished the entire concept of legitimacy and substituted, as the basis for determining those rights, the concept of parentage.

However, while the Uniform Parentage Act abolishes the concept of legitimacy, the Legislature has retained, in the situation before us, two carry-overs from that concept. The effect of the new law is to draw a distinction between a natural father proven to be such by the evidence and "presumed" fathers whose paternity can be determined by use of presumptions. One such distinction is involved in the case at bench.[4] While both kinds of "fathers" are obligated to support the child and both kinds of fathers may, if they move promptly, have some rights to custody. Only a "presumed" father may, under section 224, object to an adoption sought by the natural mother. That a Legislature may validly draw that distinction is apparent from the recent decision of the United States Supreme Court in *Quilloin* v. *Walcott* (1978) 434 U.S. 246 [54 L.Ed.2d 511, 98 S.Ct. 549]. ■ Thus the only issue properly before us on this appeal is whether Charles has the status of a "presumed" father under paragraph (4) of subdivision (a) of section 7004. We conclude that he does not.

In support of his claim to being a "presumed" father, Charles relies on a series of cases decided under old section 230. It is true that, in the cases so relied on, the courts strained to find a legitimation under that section, because the status of legitimacy had such importance at that time. However, that motivation is no longer present under the present law as applied to the facts of this case. Whether Charles is, or is not, determined to be the child's father, the baby will end up with a father—either Charles or Ronald K.

---

[4]Another similar distinction is drawn by section 197 as now amended. That section now reads: "The mother of an unmarried minor child is entitled to its custody, services and earnings. The father of the child, if presumed to be the father under subdivision (a) of Section 7004, is equally entitled to the custody, services and earnings of the unmarried minor. If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings." (Italics added.)

Even the cases under old section 230, seeking to establish legitimacy, fail to support Charles' claim that he can rely on paragraph (4). In *Lavell v. Adoption Institute* (1960) 185 Cal.App.2d 557 [8 Cal.Rptr. 367], an admitted natural father had lived with the mother during conception, and had openly acknowledged that the expected child was his. In *Hurst v. Hurst* (1964) 227 Cal.App.2d 859 [39 Cal.Rptr. 162, 19 A.L.R.3d 635], the natural father, who had at all times admitted his paternity, rented an apartment in his name, established the mother and child therein, and paid the expenses of the household. In *In re Richard M.* (1975) 14 Cal.3d 783 [122 Cal.Rptr. 531, 537 P.2d 363], the natural father and the mother had lived together for two weeks after the birth of the child and, thereafter, the child, with the consent of the mother, had visited the natural father for weekends and, occasionally, for longer periods.

In all of those cases, and the other cases on which they rely, there was some actual contact between the natural father and the child; here there was none.

Charles here relies on the fact that he has tried to have the child with him in his mother's home but has been frustrated in those attempts by the refusal of the mother to permit him to have the child. But that is not sufficient. The cases have recognized that a mother may, by her conduct, prevent a natural father from securing even the minimal contact with the child that old section 230 required. (*Adoption of Rebecca B.* (1977) 68 Cal.App.3d 193, 198 [137 Cal.Rptr. 100]; *In re Reyna* (1976) 55 Cal.App.3d 288, 300 [126 Cal.Rptr. 138].) Absent even the minimal contact recognized in the cases above cited, there can be no receipt, constructive or otherwise, into the home of a purported father. Since nothing in the record before us shows any contact between Charles and the child, but only his efforts to establish such contact, rejected by the mother, the finding of the trial court that Charles is a "presumed" father under section 7004 is without support and must be reversed.

The order appealed from is reversed.

Files, P. J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

I disagree with the majority's view that the evidence fails to support the trial court's finding that Charles K. was the natural father of the minor Marie R. The majority takes the view that Charles K. cannot take advantage of the provisions of Civil Code section 7004, subdivision (a)(4). It is the majority's view that subdivision (a)(4), which provides that a man is presumed to be the natural father of a child if "[h]e receives the child into his home and openly holds out the child as his natural child," requires that there be *some contact* with the child; otherwise, the failure of the man, who asserts he is the father, to *physically* receive the child into his home precludes the application of the rebuttable presumption set forth in Civil Code section 7004, subdivision (a)(4).

I

*The Rebuttable Presumption of Fatherhood*
*Created by Civil Code Section 7004,*
*Subdivision (a)(4)*

In view of what the California Supreme Court stated in *In re Richard M.* (1975) 14 Cal.3d 783 [122 Cal.Rptr. 531, 537 P.2d 363], I cannot agree with the narrow interpretation placed upon Civil Code section 7004, subdivision (a)(4) by the majority opinion. I concede that former Civil Code section 230 dealt with the matter of the legitimation of an illegitimate child by an *unquestioned* natural father, whereas Civil Code section 7004, subdivision (a)(4), is concerned with the establishment of a parent and child relationship, irrespective of whether the child is born of married parents or of nonmarried parents.

The language of Civil Code section 7004, subdivision (a)(4), is very similar to that of the language used in former Civil Code section 230. Thus, section 230 used the language of legitimation of a child by a father "publicly acknowledging [the child] as his own" and "receiving [the child] as such, . . . into his family." Civil Code section 7004, subdivision (a)(4), substitutes for that language substantially similar language in providing that a man is presumed to be the natural father of a child if "[h]e receives the child into his home" and, in addition, "openly holds out the child as his natural child."

In view of the similarity of language, the decisions interpreting former Civil Code section 230 are of significance in determining whether similar

language used in Civil Code section 7004, subdivision (a)(4), should be given a similar interpretation. The case of *In re Richard M.* points out that former Civil Code section 230 did not require that a child must be physically present in the father's home, but that a *constructive* reception into his home would suffice. Insofar as the actual holding of *In re Richard M.* is concerned, the court stated: "It is unnecessary for us to here consider the extent to which courts have expanded the concept of 'receiving.' *Blythe* v. *Ayres, supra,* 96 Cal. 532 [31 P. 915], probably goes the farthest in liberally construing this requirement, since the father was found to have satisfied the statutory mandate without ever actually seeing the child. It is noteworthy that this determination was subsequently criticized by this court in *Estate of De Laveaga* (1904) 142 Cal. 158, 169-170 [75 P. 709]." (*In re Richard M., supra,* 14 Cal.3d 783, 795, fn. 9.)

But after making this comment in a footnote, *In re Richard M.* went on to set forth a summary of interpretations of statutes in other states without any criticism thereof: "In addition, they state that the 'reception' into the father's family need not be indefinite or continuous. Rather, the requirement is satisfied by 'an actual physical acceptance of the child into . . . [the father's home] for a short duration. [Fn. omitted.] *And even where no home exists, . . . courts have also recognized a constructive reception into the family, as by public and proud acknowledgements of paternity.* [Fn. omitted.]' [Citations.]" (*Id.,* at p. 797.) (Italics added.)

What is significant in the case at bench is that respondent Charles did everything he reasonably could do to establish that he was the natural father of the minor, Marie R. The settled statement on appeal indicates that, prior to the birth of Marie R., on December 30, 1975, Charles filed a complaint to establish that he was the father of Sheila's then-expected child. Sheila married Scott R. on January 8, 1976, and Sheila gave birth to Marie R. on January 11, 1976, three days later. Sheila and Charles both testified that they had engaged in sexual intercourse during the period of possible conception of Marie R. Sheila also testified that she had engaged in sexual intercourse with Scott during the same period of time. She also testified that she let Charles assume that he was the father, although she was in fact unable to determine actual paternity between the two men.

The trial court made a finding that, although Charles had never actually seen the baby nor received the baby into his home, he had offered to contribute to both Sheila's prenatal support, the expenses of birth, and the baby's support. The court made a finding that Charles had

constructively received the baby into his home, and that the actual receipt of the baby into his home was prevented by the actions of the natural mother.

Although the facts go beyond any California decided case, I consider that the principles set forth in *In re Richard M.* dictate that the trial court's finding of constructive reception by Charles of Marie into his home be upheld. The action filed by Charles in the San Bernardino County Superior Court on December 30, 1975, to establish his paternity of the expected child of Sheila constituted a "public and proud [acknowledgment] of paternity." (*In re Richard M., supra,* 14 Cal.3d 783, 797.) This alone should be deemed sufficient to constitute a constructive reception into his home. The finding of constructive reception by such a public acknowledgment is strengthened by the finding of the trial court that the actual receipt of the baby, Marie R., into the home of Charles "was prevented by the actions of the natural mother."

The majority relies upon *Adoption of Rebecca B.* (1977) 68 Cal.App.3d 193 [137 Cal.Rptr. 100], and *In re Reyna* (1976) 55 Cal.App.3d 288 [126 Cal.Rptr. 138], as interpreting former Civil Code section 230 to mean that a mother's conduct in precluding a father from securing minimal contact with the child cannot be used to substitute constructive reception for an actual reception into the father's home.

But all that *Rebecca B.* decided was that frustration of a father's attempt to take a child into his family was, *by itself,* insufficient to constitute a legitimation under former Civil Code section 230. The case of *In re Reyna* is similar to *Rebecca B.* But the *In re Reyna* court points out that the real holding of both *Rebecca B.* and *Reyna* is simply that, by reason of former Civil Code section 200, giving the mother of an illegitimate child exclusive custody, the mother " 'was able to prevent the father from establishing *any* relationship with the child, much less physically receive it into his family. On this basis, the courts concluded that the children had not been legitimated.' " (*In re Reyna, supra,* 55 Cal.App.3d 288, 300.) (Italics in original.)

Civil Code section 200 was repealed in 1975 and Civil Code section 197 was enacted to change the public policy emphasis on "legitimacy" to that of an emphasis on the "parent and child relationship." It follows that cases such as *Rebecca B.* and *In re Reyna,* which emphasize the public policy of "legitimacy" set forth in former Civil Code section 200, cannot be considered as constituting persuasive authority under the

Uniform Parentage Act (Civ. Code, § 7000 et seq.), which has substituted a wholly different public policy in promoting the "parent and child relationship" without regard to the question of legitimacy or illegitimacy of the child involved. (See Civ. Code, § 7002.)

In *In re Tricia M.* (1977) 74 Cal.App.3d 125 [141 Cal.Rptr. 554], the court points out that the Uniform Parentage Act makes a distinction between "natural father" and "presumed father" for various purposes in facilitating the use of evidence and as words of art for purposes of adoption proceedings. The *Tricia M.* court points out that, in an adoption proceeding, a significant result flows from a particular provision of Civil Code section 7017, subdivision (d). The pertinent provision of subdivision (d) provides: "If the natural father or a man representing himself to be the natural father, claims custodial rights, the court shall proceed to determine parentage and custodial rights *in whatever order the court deems proper.*" (Italics added.)

The *Tricia M.* court interprets this particular provision of Civil Code section 7017, subdivision (d), as authorizing the court to adopt the following procedure: "Where the mother has frustrated the natural father's efforts to hold the child out as his, the court may, in a proper case, first grant him custody, allow him to complete the conduct necessary under section 7004, subdivision (a)(4), to establish himself as a presumed father, and then make the appropriate order." (*In re Tricia M., supra,* 74 Cal.App.3d 125, 134.) The appropriate order referred to by *In re Tricia M.* in this situation would be a finding that the man representing himself to be the natural father is now a presumed father under Civil Code section 7004, subdivision (a)(4), by virtue of obtaining custody rights, and the court could then make the order providing that the father's consent would be required for an adoption of the child.

However, in the case at bench, since we have *more* than a simple case of frustration by the mother of the father's efforts to take the child into his home, I consider the evidence sufficient for a "constructive" taking of the child into his home to support the trial court's order that Charles was the natural father of the minor, Marie, by virtue of Civil Code section 7004, subdivision (a)(4). Under the *Tricia M.* court's view, the trial court in the case at bench would have been justified in awarding Charles custody of Marie to enable him to comply with Civil Code section 7004, subdivision (a)(4), and then issue a subsequent order that he had complied with that section and requiring his consent for Marie's

adoption. In my view, this roundabout method, authorized by Civil Code section 7017, subdivision (d), is not required in the case at bench because of the evidence before the court.

The evidence supports the trial court's order as complying with other provisions of Civil Code section 7017, subdivision (d), since that section provides, that, in an adoption proceeding, if the court finds that the man representing himself to be the natural father is a *presumed* father under subdivision (a) of section 7004 of the Civil Code, then the court shall issue an order providing that the father's consent shall be required for an adoption of the child. This was certainly the basis of the trial court's order in the case at bench, and the evidence is sufficient to support that order.

It is to be noted that, in the case at bench, the trial court also ordered that Charles was legally entitled to the custody of Marie under Civil Code section 197, which provides that "[t]he father of the child, if presumed to be the father under subdivision (a) of Section 7004, is equally entitled [with the mother] to the custody, services and earnings of the unmarried minor."

Clearly, Civil Code section 7004, subdivision (a)(4), should be given a liberal interpretation in light of the public policy that favors a "parent and child relationship," rather than the former public policy that favored "legitimacy."

"Under the Uniform Parentage Act (Civ. Code, § 7000 et seq., enacted Stats. 1975, ch. 1244), the 'child and parent relationships' extend equally to every child and to every parent regardless of the marital status of the parent. All statutory references to 'legitimacy' and 'illegitimacy' are eliminated. The major premise of the act is to provide for substantive equality of children regardless of the marital status of the parents. The right-duty relationship existing between the parent and child are equalized without reference to the marital status of parents, without regard to sex." (*Griffith* v. *Gibson* (1977) 73 Cal.App.3d 465, 470 [142 Cal.Rptr. 176].) In addition to the Uniform Parentage Act, other recent legislation has declared that the policy in favor of a "parent and child relationship" is the fact of importance in family history in place of the former provisions of the fact of "legitimacy." (Stats. 1975, ch. 1244, §§ 15-20, pp. 3202-3203.)

## II

### The Effect of Two Conflicting Rebuttable Presumptions Under Civil Code Section 7004, Subdivision (a)

Since I determine that the trial court correctly found that Charles had the benefit of the rebuttable presumption of being the natural father of Marie R. under Civil Code section 7004, subdivision (a)(4), it becomes necessary for me to discuss the interplay of the two presumptions that are applicable in the case at bench. In view of the marriage of Marie's mother to Scott R., prior to the birth of Marie, Scott must also be presumed to be the natural father of Marie, pursuant to Civil Code section 7004, subdivision (a) (1). That rebuttable presumption is created in favor of a man who is married to the child's natural mother and the child is born during the marriage.

In the case at bench, therefore, we have a situation of two men being presumed to be the natural father of the same child. What is the effect of the conflicting presumptions in this situation?

Contrary to the views of the majority in the case at bench, the code provisions emphasize the use of presumptions to establish the identity of the *natural* father of a child. These presumptions do *not* emphasize a distinction between a "presumed" father, and a "natural" father established by evidence, as the majority asserts. It is a cardinal principle under the Evidence Code that presumptions facilitate the *use* of evidence and do *not* constitute a rule of evidence that blurs the distinction between the concept of a presumption and the concept of evidence itself.

Thus, Evidence Code section 621 is one of the fatherhood presumptions that is referred to in Civil Code section 7004, subdivision (a). However, Evidence Code section 621 creates a *conclusive* presumption of fatherhood for a husband in the case of "the issue of a wife cohabiting with her husband, who is not impotent or sterile." All of the other presumptions under section 7004 are made *rebuttable* presumptions.

Civil Code section 7004, subdivision (b), provides that each presumption under section 7004—other than the presumption created by Evidence Code section 621—is a rebuttable presumption that affects the burden of proof, and which imposes upon the opponent of the presumption the burden of rebutting the presumption by *clear and*

*convincing evidence.* Subdivision (b) further provides that "[i]f two or more presumptions arise under this section which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls."

The facts in the case at bench are such that the presumption in favor of Charles as the father of Marie under Civil Code section 7004, subdivision (a)(4), is founded on the weightier considerations of policy and logic and, hence, controls over the presumption in favor of Scott as the father of Marie under Civil Code section 7004, subdivision (a)(1).

The facts in the case at bench demonstrate the need for a liberal interpretation of Civil Code section 7004, subdivision (a)(4), since the fatherhood presumption, set forth in Civil Code section 7004, subdivision (a)(1), that favors Scott as the father of Marie, has little to support it under the circumstances presented. Thus, Scott married the mother of Marie only three days before Marie's birth, and the mother concedes a sexual relationship with both Charles and Scott at the time of Marie's conception and indicated that she had no real idea of which man was Marie's father.

As indicated previously, Charles instituted an action before Marie's mother, Sheila, and Scott married, to establish that he was the father of Sheila's expected child. Under the circumstances presented in the case at bench, to permit a mother's action of preventing a claimed father from meeting the conditions of the rebuttable presumption of a natural father, set forth in Civil Code section 7004, subdivision (a)(4), is to authorize a rank injustice.

Both Scott and Charles must be labeled as "presumed fathers" under Civil Code section 224 that deals with adoptions. But the language in Civil Code section 224—"[a] child having a presumed father under subdivision (a) of Section 7004"—is unfortunate and misleading. Civil Code section 7004 does not create a "presumed father." Section 7004, subdivision (a), provides that "[a] man is presumed to be the *natural* father of a child" (italics added) if he meets any of the conditions set forth in subdivision (a). A child, therefore, does not have a "presumed father" by virtue of Civil Code section 7004, subdivision (a). A child has a "natural father" under subdivision (a) by virtue of the operation of a rebuttable presumption. In view of the operation of the rebuttable presumptions under Civil Code section 7004, subdivision (a), and the

evidence presented below, Charles—not Scott—is entitled to be considered the *natural* father of Marie.

I would thus affirm the order from which the appeal has been taken.

Petitions for a rehearing were denied April 26, 1978. Jefferson (Bernard), J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied June 9, 1978.