[Civ. No. 44629. Second Dist., Div. Two. May 15, 1975.]

Adoption of PAMELA JILL DUCKETT, a Minor.
RICHARD GREGORY ROBINSON, Plaintiff and Appellant, v.
VERNON FRANCIS DUCKETT, Defendant and Respondent.

## COUNSEL

Cummins, White & Breidenbach and Janice R. Castro for Plaintiff and Appellant.

Arthur Wasserman and Richard J. Burton for Defendant and Respondent.

## OPINION

**COMPTON, J.**—Richard Robinson (petitioner) appeals from a judgment of the superior court denying his petition to adopt his stepdaughter, Pamela Duckett.

Petitioner's wife, Pamela's mother, had been twice previously married. The first of these former unions, a marriage to one Travis, produced three children. The second was a marriage to Vernon Duckett. Pamela who· was born December 16, 1964, was the only child of that marriage. The mother and Duckett were divorced in June 1970 and the mother was awarded custody. Petitioner and the mother were married on May 5, 1972.

On December 27, 1972, petitioner filed his petition to adopt all four of his wife's children. The wife consented to the adoption and the Department of Adoptions of Los Angeles County recommended approval of the adoption declaring that petitioner was a suitable person and that the adoption would be in the best interests of the children.

Neither Travis nor Duckett consented to the adoption and the trial court conducted a hearing to determine if, pursuant to Civil Code section 224, the children were adoptable without consent of the natural fathers. At the conclusion of the hearing the trial court approved the petition as to the three Travis children and denied the petition as to Pamela.

Civil Code section 224 at the time of the proceedings provided in part:

"[A]fter the custody of any child has, by any judicial decree, been given to the father, and the mother for a period of one year fails to communicate with such child when able to do so, or been given to the mother, and the father for a period of one year shall willfully fail to pay for the care, support and education of such child when able to do so, then the parent to whom custody has been given alone may consent to such adoption, . . . failure of father to pay for the care, support and education of such child for such period of one year . . . is prima facie evidence that such failure was willful and without lawful excuse; . . . "

In effect, then, willfulness is presumed from the failure of a father to provide support. Since the record demonstrates that the interests of all four children would be well served by the adoption and the uncontradicted evidence established that Vernon Duckett failed to provide any support for Pamela following the award of custody to the mother, the only issue presented is whether Vernon Duckett by sufficient evidence overcame the presumption that his failure was willful. If not, it was an abuse of discretion to deny the petition.

The evidence established that Mr. Duckett, since June of 1969, the time of the interlocutory decree had not only failed to provide support but also failed to communicate with Pamela or her mother during that period of time. Mr. Duckett did not appear at the hearing but was represented by an attorney. At the time of the hearing Mr. Duckett was residing in the eastern part of the United States.

In April 1971, the evidence disclosed that Mrs. Robinson, the mother, began to receive $21 a month as Social Security benefits for Pamela

under Mr. Duckett's Social Security account. These benefits continued for six months when they were reduced to $9 a month. In October 1972, they were raised to $10.50 a month, and these payments continued up to the time of the hearing.

In May of 1965, Mr. Duckett took a position with an architectural firm of Daniel, Mann, Johnson & Mendenhall as an architect and went to Viet Nam. He did not return until November of 1970. Upon his return he resided on the east coast. At the hearing it was stipulated that were Mr. Duckett present he would testify that since June of 1969 his sole income was from disability benefits of $300 a month as a result of his having been injured "in some manner" in Viet Nam.

The effect of this stipulation, as we see it, was to establish that the father did in fact have some income. It was woefully inadequate to establish any excuse for his failure to provide support for his child nor did it support any excuse for his failure to communicate with the child. The critical period under Civil Code section 224 for determining the duration of lack of support begins with the award of custody. (*Adoption of Smith*, 270 Cal.App.2d 605 [75 Cal.Rptr. 900]; *Adoption of Burton*, 147 Cal.App.2d 125 [305 P.2d 185].)

Even if the rather minimal Social Security benefits which were provided to Pamela commencing in 1971 were considered to constitute "support," a question we need not decide, they did not eradicate the failure of more than one year's duration following the award of custody. While $300 a month cannot be considered a substantial income today, it did have greater value in 1969 and 1970. In any event that figure, without more, does not establish a lack of ability to provide support as a matter of law.

". . . Civil Code, section 224, recognizes the father's right to effectively object to the adoption of his children, by requiring that he give his consent to such adoption, and provides that he may lose that right upon the happening of events which are tantamount to an abandonment. At any time after the conditions of the statute, with respect to neglect by the father, have been fulfilled, a child may be adopted with the consent of the mother alone, unless the court, in the discharge of its obligation to approve the adoption only if it is for the best interests of the child, should determine otherwise. . . . The obvious purpose of the statute . . . is to provide a child with a real father instead of one who, by his past conduct, is proven to be a father in name only, even though related by

blood." (*Adoption of Burton, supra*, 147 Cal.App.2d 125, at p. 134; *Adoption of Thevenin*, 189 Cal.App.2d 245 [11 Cal.Rptr. 219].)

■ The requirement of consent by a natural parent is not strictly construed in favor of the rights of the natural parent but instead is liberally construed in order to effect the object of the adoption statute in promoting the welfare of the children. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court*, 7 Cal.3d 1 [101 Cal.Rptr. 541, 496 P.2d 453].)

The authorities establish that Civil Code section 224, permitting adoptions upon consent by one natural parent, is fashioned for the situation where the other natural parent has been guilty of conduct tantamount to abandonment of the child or which is destructive of the parent-child relationship. The duty of support normally falls to the father hence abandonment by a mother is found in the failure of communication. In the case of the father it is found in the willful failure to provide support. However, in a situation where a court has before it a failure on the part of the father to provide support which failure is accompanied by a complete lack of communication the total context is to be examined and this lack of communication which itself indicates abandonment bears on the issue of whether the failure to support was willful.

Clearly the interests of Pamela are best served by adoption by the petitioner which would permit her to become a full-fledged member of the family along with the other children, whose adoption was approved. ■ In light of Duckett's failure to present any substantial evidence to negate the presumption that his failure to support Pamela was willful, a liberal construction of Civil Code section 224 points to an abuse of discretion in denying the petition.

The judgment is reversed.

Fleming, Acting P. J., and Beach, J., concurred.