[Civ. No. 47701. Second Dist., Div. Four. June 28, 1976.]

Adoption of JAMES TIMOTHY COFFEE, a Minor.
MAURICE N. CARTER, Plaintiff and Respondent, v.
RALPH T. COFFEE, Defendant and Appellant.

**COUNSEL**

Williamson, Wayne & Steiner and Diane Wayne for Defendant and Appellant.

Goodman, Hirschberg & King and Lance S. Spiegel for Plaintiff and Respondent

## OPINION

DUNN, J.—Ralph Coffee appeals from a judgment approving the adoption of his minor son, James Coffee, by Maurice Carter, the boy's stepfather.

Carter's amended petition for adoption, filed January 17, 1975,[1] alleged: he and Jacqueline Carter, James' mother, were married April 15, 1972; formerly she was married to Ralph Coffee, James' father; that marriage was dissolved by a final decree of divorce entered April 22, 1968; the mother has the right to the custody of James; petitioner desires to adopt James; his mother is prepared to consent to the adoption, but his father refuses to consent to it; for more than five years last past, the father "has willfully failed to pay for the care, support and education of the child, having the ability to do so."

James' mother signed a written consent to his adoption by petitioner (Civ. Code, § 226.1, subd. (a)), which consent was filed January 31, 1975. On the same date, a report of the Los Angeles County Department of Adoptions was filed, recommending that the petition be granted provided the court found that the father's consent to the adoption was not necessary. (Civ. Code, § 227a.)

The petition for adoption was heard June 12, 1975. Ralph Coffee, James' natural father, appeared in person and by counsel, although no answer or written objections to the petition had been filed in his behalf. The only evidence considered by the court which appears in the record furnished to us[2] is the report of the department of adoptions, which showed: the interlocutory judgment of divorce awarded the custody of James to his mother, and ordered that his father make child support

---

[1] The original petition was filed September 16, 1974.

[2] The decree of adoption recites that petitioner, his wife and the minor child appeared and were examined by the court; evidence, both oral and documentary, was received. However, the reporter's transcript furnished to us does not contain such evidence, but the deficiency is immaterial, since appellant does not challenge the sufficiency of the evidence to support the findings.

payments of $15 per week commencing January 27, 1968; the mother received no child support payments from the father; in 1972 the father was convicted of two felony counts (for violations of Pen. Code, §§ 211, 459), and was sentenced to state prison for a term of five years to life on each count, the sentences to run consecutively; on February 8, 1972, he began serving his sentence, and would not be eligible for release on parole until February 1976; as of December 1974, he had an "institutional pay position" in which he was paid $7.50 per month; the father opposed the adoption of his son by petitioner.

In its "Decree of Adoption" the court found: all of the allegations of the amended petition were true; for more than one year, James' father willfully failed to pay for his care, support and education when able to do so; accordingly, the father's consent to the adoption was not necessary; the best interest of the child would be promoted through his adoption by petitioner.

At the time of the adoption proceeding herein, Civil Code section 224 provided in pertinent part: "A child . . . cannot be adopted without the consent of its parents if living; however, if . . . the mother has been awarded custody by judicial decree or has custody by agreement of the parents, and the father for a period of one year shall willfully fail to pay for the care, support and education of such child when able to do so, then the parent having custody alone may consent to such adoption . . . failure of the father to pay for the care, support and education of such child for such period of one year . . . is prima facie evidence that such failure was willful and without lawful excuse."[3]

■ Appellant contends that section 224 denies equal protection of the laws[4] to a father in that he may be deprived of parental rights if he willfully fails to support his child for one year, whereas a mother can preserve her parental rights merely by communicating with the child without the necessity of contributing to its support.

---

[3]Effective January 1, 1976, section 224 was amended to read: "A child . . . cannot be adopted without the consent of its parents if living; however, if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents, and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of such child when able to do so, then the parent having custody alone may consent to such adoption . . . failure of a parent to pay for the care, support and education of such child for such period of one year or failure of a parent to communicate with such child for such period of one year is prima facie evidence that such failure was willful and without lawful excuse . . . ." (Stats. 1975, ch. 1244, § 7.)

[4]United States Constitution, 14th Amendment; California Constitution, article I, section 7, subdivision (a).

A similar attack on the constitutionality of section 224 was rejected in *Adoption of Ahmed* (1975) 44 Cal.App.3d 810 [118 Cal.Rptr. 853], wherein the court stated (pp. 813-814): "In specifying the grounds for loss of the right of withholding consent to an adoption, the statute does differentiate between the father and the mother. Our experience in cases of this character is that when custody of small children has been awarded to their mother, differences in parental earning capacity usually lead the court to order the father to pay for the support of the children. On the other hand, it is not common for a mother to be deprived of custody and be ordered to pay her former husband for the support of the children. These realities have not been altered by the statutory provision (Civ. Code, § 4700, *supra*) which empowers the court to order either parent to pay child support. Although the child placed in the custody of the mother will in most cases benefit from paternal visitation and other communication, the father's obligation to pay for support is more pressing than his natural obligation to communicate with his children in that (1) parental support may be all that protects the child from destitution and (2) the obligation has been defined and imposed by a judicial decree. Where the obligation of support is not met by the natural father, the child has urgent need for an alternative provision, as by an adoption. Thus, Civil Code section 224 is in accord with the interests of children in need of adoption and is necessary to further the state's compelling interest in making adoptions possible in proper cases. . . . We conclude that Civil Code section 224 does not unconstitutionally discriminate against appellant."

Appellant argues that *Ahmed* was "implicitly overruled" by *Weinberger* v. *Wiesenfeld* (1975) 420 U.S. 636 [43 L.Ed.2d 514, 95 S.Ct. 1225], decided two months after the *Ahmed* opinion was filed. In *Weinberger,* the United States Supreme Court considered the question whether a provision (42 U.S.C.S., § 402(g)) of the Social Security Act is unconstitutional to the extent it treats men and women differently. Under section 402(g), benefits based on the earnings of a deceased husband and father are payable both to the widow and to the couple's minor children under her care, whereas benefits based on the earnings of a deceased wife and mother are payable only to the minor children and not to the widower. The court held that such statute violates the right to equal protection under the due process clause of the Fifth Amendment, stating: "[T]he Constitution . . . forbids the gender-based differentiation that results in the efforts of female workers required to pay social security taxes producing less protection for their families than is produced by the

efforts of men. . . . Given the purpose of enabling the surviving parent to remain at home to care for a child, the gender-based distinction of § 402(g) is entirely irrational." (420 U.S. at pp. 645, 651 [43 L.Ed.2d at pp. 523, 527].) Obviously Civil Code section 224 does not suffer from a like infirmity. The "gender-based distinction" there expressed is premised on a difference in parental earning capacity, which difference usually leads a court to order that the father pay for the support of minor children whose custody has been awarded to the mother. (*Adoption of Ahmed*, *supra*, 44 Cal.App.3d at p. 813.) In *Weinberger*, the Supreme Court recognized that "the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support. . . . [A] statute 'reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden' can survive an equal protection attack." (420 U.S. at pp. 645, 648 [43 L.Ed.2d at pp. 523, 524-525].)

■ Appellant next contends the trial court erred in determining that appellant's failure to pay for his son's care, support and education was "willful" within the meaning of Civil Code section 224. At the hearing on the petition for adoption, the court stated: "The Court finds that Mr. Coffee [appellant] has been continuously incarcerated since September, '71. He was first incarcerated in the Los Angeles County Sheriff's facility after arrest and during trial proceedings, and that commencing in February, '72, he was transferred to a State custodial facility and that he was continuously from September, '71, until the present incarcerated, and during the entire period of time from February, '72, until the present he has had no income except . . . [s]even dollars and fifty cents per month, plus no more than one hundred dollars in gifts from family and friends in 1974 and a like maximum sum in 1973. [¶] The Court would find from those facts that Mr. Coffee did not have in hand at any time since September, '71, fifteen dollars per week or any significant portion thereof with which to comply with the support order that had been made in 1968. [¶] The Court would further find and conclude that by reason of his conduct before September, 1971,[5] and as a direct and proximate result thereof, he became incarcerated and, therefore, his lack of possession of the money with which to pay for the support or contribute to the support of the minor child was willful as that term is used in

---

[5]The court additionally found that appellant's conduct (i.e.: failure to pay support) before September 1971, "seems to be so remote" as to have no "significant probative value" in determining willfulness.

section 224 of the Civil Code. [¶] The Court would further find Mr. Coffee is an able-bodied male capable of gainful employment that would produce income and which would have produced income during the period from September, 1971, forward to the present time sufficient to pay fifteen dollars per week for the support of the minor child, but that by reason of his incarceration he has not been permitted to have that employment.

The purpose of Civil Code section 224 is to prevent the adoption of a child without the consent of both parents "unless custody of such child has been given to the mother by judicial decree, and, during the time the child is in the custody of the mother, the father has *willfully* failed to pay for the support, care and education of that child for a period of one year, *when able to to do so,* in which event the child may be adopted with the consent of the mother alone . . . ." (*Adoption of Burton* (1956) 147 Cal.App.2d 125, 131 [305 P.2d 185], italics added.)

The trial court in the present case found: at no time since appellant's incarceration in 1971 did he have money with which to comply with the order for payment of child support; appellant's conduct had led to his incarceration; but for such incarceration, he would have been capable of earning money with which to pay for the support of his son. From these findings, the court concluded that appellant's inability to pay was "willful," as that word is used in section 224. We believe such conclusion is erroneous.

A father who is unable to comply with an order for the payment of child support cannot be adjudged in contempt for such noncompliance unless he has voluntarily created the disability for the purpose of avoiding payment. (See *Bailey* v. *Superior Court* (1932) 215 Cal. 548, 552 [11 P.2d 865]; 16 Cal.Jur.2d, Rev., Divorce, Separation, etc., § 272, pp. 684-685.) By analogy, under section 224 a father's inability to pay for the support of his child is willful only if the father voluntarily created such inability *for the purpose of avoiding payment.* The evidence here does not support an inference that appellant committed the felonies for which he was incarcerated for the purpose of avoiding the obligation to pay for the support of his son. It follows that appellant's failure to make child support payments was not "willful," as that term is used in section 224.

However, section 232 (effective before the hearing date) reads in pertinent part: "(a) An action may be brought for the purpose of having

any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions: . . . [¶] (4) Whose parent or parents are convicted of a felony, if the felony of which such parent or parents were convicted is of such nature as to prove the unfitness of such parent or parents to have the future custody and control of the child, or if any term of sentence of such parent or parents if of such length that the child will be deprived of a normal home for a period of years."

And section 232.5 reads: "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child."

In view of this legislative policy, we reverse, holding that the trial court should determine if, under evidence to be offered, section 232, subdivision (a)(4), applies to this action.

The judgment is reversed with the foregoing instructions.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.