[Civ. No. 21585. Fourth Dist., Div. Two. Oct. 28, 1980.]

Adoption of JENNIE L., a Minor.
DIANE M., Plaintiff and Respondent, v.
CHRISTIAN V. et al., Defendants and Appellants;
JENNIE L., a Minor, Real Party in Interest and Appellant.

424

**COUNSEL**

Wenke, Taylor, Evans & Ikola and Richard A. Derevan for Defendants and Appellants.

David F. Blaisdell, under appointment by the Court of Appeal, for Real Party in Interest and Appellant.

Pray, Price, Williams & Russell, James B. Russell and James E. Sutherland for Plaintiff and Respondent.

OPINION

MORRIS, J.—Appellants Christian and Cynthia V. appeal from a judgment granting the natural mother's petition to withdraw her consent to the adoption of her child, Jennie L., by the appellants, and dismissing the adoption proceedings.

## The Facts

Jennie L. was born to Diane M. on August 5, 1978. The unwed mother was 16 years of age at the time. When she reported the fact of her pregnancy to her parents, they were upset and angry. They first took her to a doctor to discuss an abortion. When Diane refused an abortion her parents took her to see the appellants' attorney to discuss a possible adoption. A tentative agreement was reached and thereafter appellants were included in the planning for the birth of the child. Appellants were notified when Diane went to the hospital so that they would be present for the delivery, and Diane signed a release to permit the appellants to take Jennie L. home with them from the hospital. Two days later the appellants filed a petition for independent adoption.

On November 6, 1978, Diane was taken to see an adoption worker at the Department of Social Services where she signed an adoption consent form. Shortly after signing the consent she told the worker that she wanted to withdraw her consent to the adoption. She then signed a statement refusing to consent to the adoption, and the consent previously signed by her was returned to her at that time. Thereafter, she went to the appellants' home to pick up Jennie L., but they refused to return the child to her. After some conversation with appellants, Diane again changed her mind and agreed to proceed with the adoption. On November 7, 1978, she returned the consent form to the adoption services, and stated that she wished to go ahead with the adoption. However, on November 8, 1978, a social worker contacted Diane to verify her consent and Diane again refused to consent. At that time she advised the worker that she had been coerced by her father into signing the original consent.

On November 14, 1978, Diane filed a petition in the superior court for a writ of habeas corpus, seeking the return of her child. Following an evidentiary hearing, the court found that the consent was valid and denied the writ. A subsequent petition for a writ of habeas corpus was

denied by this court, and the California Supreme Court denied a hearing. Both denials were without opinion.

On February 20, 1979, after the appellants had made an application to proceed with the adoption, Diane filed a petition to withdraw her consent to the adoption. Following a five-day trial, the trial court entered the judgment allowing the consent to be withdrawn and dismissing the adoption petition.

## Discussion

Appellants contend that the trial court erroneously relied on Civil Code section 4600 in allowing consent to be withdrawn; the trial court failed to find that withdrawal of consent would be in the best interest of the child as required by Civil Code section 226a;[1] the judgment is not supported by substantial evidence; there was no finding of fraud or duress or that the adoptive parents had knowledge of such fraud and duress; the court committed prejudicial error in excluding evidence relating to Diane's background; and Diane committed a criminal act in destroying evidence which alone justifies reversal of the judgment.

### I. Applicable Law

The petition to withdraw consent was filed pursuant to section 226a. Section 226a provides in pertinent part as follows: "Once given, consent of the natural parents to the adoption of the child by the person or persons to whose adoption of the child the consent was given, may not be withdrawn except with court approval. . . .

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . .If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court shall approve the withdrawal of the consent; otherwise the court shall withhold its approval. If the court approves the withdrawal of consent, the adoption proceeding shall be dismissed."

None of the parties requested findings of fact and conclusions of law, and none were filed. However, the court's memorandum decision re-

---

[1]All statutory references are to the Civil Code unless otherwise stated.

veals that although the court was aware of the requirements of section 226a and considered them in making the determination to allow the consent to be withdrawn, the court also applied Civil Code section 4600 in reaching its decision. The court first stated, "The major issue in this case is whether or not the consent can be withdrawn if it is reasonable in view of all the circumstances and will be for the best interests of the child in accordance with C.C. 266a. [The intended citation is to section 226a, not section 266a.]"

The court then considered whether or not the consent signed by Diane was a voluntary one, i.e., whether Diane was so pressured by her father that she did not act on her own volition; whether she understood the nature of the consent; and whether the alleged misrepresentation regarding the appellants' background influenced her decision to consent.

Although the trial court erroneously stated that the issue of voluntariness was not tried at the hearing on the writ of habeas corpus, the court clearly stated that the issue was being "considered in this hearing as it may bear on the reasonableness of the withdrawal of the consent" under section 226a.

The court then considered the evidence relating to the father's pressure on Diane, her understanding of the procedures, and the alleged misrepresentations.[2] Although the court found the testimony of Diane and her father relating to the alleged misrepresentations to be less than credible, the court concluded that Diane had not wanted to consent and had used the appellants' divorce history as an excuse to withdraw consent. The court further determined that Diane had been pressured by her family to place the child for adoption, and that, although she had acquiesced in this decision for a time, she had not voluntarily signed the consent to adoption. The court considered that another factor supporting Diane's desire to get her child back was the speed with which she acted to withdraw the consent. The court concluded "as to the first requirement of § 226a it appears reasonable to allow the consent to be withdrawn."

Thereafter, the court dealt with the second requirement of section 226a; i.e., that the withdrawal must be for the best interests of the child. The court enumerated all of the factors bearing on the issue, including the fact that the appellants had had Jennie L. in their home

---

[2]The alleged misrepresentations related to the testimony that she had not initially been told that the appellants had each had previous marriages.

since her birth, that they appeared to be a loving and caring couple, and had provided excellent care and a good family environment. The court in discussing the claims of the natural parent, noted that Diane's parents after a bad start were now supportive of her; that her grandmother and uncle with whom she would make her home were kind and loving people; that she had helped to take care of her four siblings, and that she is "intelligent, determined and ambitious." The court opined that although she was only 17 during the trial, she had shown restraint and maturity unusual in a 17 year old, that she appeared to be a young lady who was capable of offering love and guidance to her child, even though it might not be of the same quality as that provided by the appellants. The court then concluded that "youth and inexperience alone are not sufficient reasons to deny her the child," and "it is felt that the best interests of the child will not be effected [*sic*] in the long run by returning her to the natural mother."

■ It seems clear from the context that the court meant that the best interests of the child would not be adversely affected by returning her to her natural mother. This is not equivalent to a finding that the best interests of the child would be served by allowing consent to be withdrawn. Nevertheless, if the court had terminated the matter on that note, the judgment authorizing the withdrawal of consent might persuade us that the court had impliedly found that the child's best interests would be served by such withdrawal.

However, as appellants point out, the court proceeded to apply the parental preference standard set forth in section 4600. The court framed the issue and concluded as follows: "The third issue considered by the Court is whether or not it would be detrimental to the child to be returned to Diane as prescribed by C.C. 4600. There is nothing in Diane's background to show that her influence and environment are such that they would be of an unhealthy influence on the child. Again, youth in and of itself is not sufficient to say that detriment would result to the child because of its return and the Court will find that it would not be detrimental to the child to be returned to its natural mother.... [¶] The Court, therefore, finds that the petition to withdraw the consent must be approved."

When this matter was tried, section 4600 provided in pertinent part as follows:[3] "In any proceeding where there is at issue the custody of a

---

[3]Subsequent to the trial in this action, the Legislature made several nonsubstantive changes in the quoted portion of section 4600. (Stats. 1979, ch. 730, No. 6 West's

minor child, the court may, during the pendency of the proceeding or at any time thereafter, make such order for the custody of such child during his minority as may seem necessary or proper. . . .

".      .    .    .    .    .    .    .    .    .    .    ".    .    .    .

"Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child."

The proceeding on a petition to withdraw consent under section 226a is not a proceeding to determine custody under section 4600. Although the determination made in the section 226a proceeding will affect the ultimate issue of custody, it is not a proceeding to deprive a parent of custody.[4] More significantly, section 4600 recognizes a parental preference in cases where the court is asked to award custody to persons other than a parent. Thus, before a parent may be involuntarily deprived of custody, the court must find that parental custody would be detrimental to the child. (See *In re B.G.* (1974) 11 Cal.3d 679, 694-695 [114 Cal. Rptr. 444, 523 P.2d 244].)

On the other hand, section 226a specifically provides that where a parent has signed a consent to the adoption of a child by others, the parent may not withdraw such consent unless the court finds that withdrawal is reasonable and in the best interest of the child. The rule of strict construction of adoptive statutes in favor of natural parents has been abrogated by statute and has been disapproved by our Supreme Court. (See *Adoption of Barnett* (1960) 54 Cal.2d 370, 377-378 [6 Cal.Rptr. 562, 354 P.2d 18].)

Thus, by consenting to the adoption of a child by others, the consenting parent gives up the parental preference otherwise applicable under section 4600. It is only after the court determines under section 226a that withdrawal of the consent is reasonable and in the best interest of

Cal. Legis. Service, p. 2591, No. 5 Deering's Adv. Legis. Service, p. 18; Stats. 1979, ch. 915, No. 7 West's Cal. Legis. Service, p. 3480, No. 5 Deering's Adv. Legis. Service, p. 763.)

[4]Legal custody remains with the natural parent until the adoption petition is granted. (See *Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 271 [135 Cal.Rptr. 866].)

the child that the natural parent would be entitled to a section 4600 hearing in case of a custody dispute.

Here the court failed to find that it would be for the best interest of Jennie L. to allow consent to be withdrawn. Instead the court applied the parental preference applicable in custody disputes, and simply found that withdrawal of consent would not be detrimental to the child.

Because the court applied the wrong standard, the judgment must be reversed and the case remanded for the court to determine, on the evidence already submitted, whether withdrawal of the consent will be for the best interest of Jennie L.

## II. Substantial Evidence

Appellants contend that the judgment of the trial court is not supported by substantial evidence. The appellants first contend that in view of the errors of law made by the court in applying the section 4600 standard, the judgment is no longer subject to the substantial evidence rule, and that this court should exercise an independent judgment. We agree that we cannot on the present record apply the substantial evidence rule. This is so because the trial court has not yet weighed the evidence by the proper standard. However, we reject appellants' contentions that we should exercise an independent review of the evidence presented to the trial court without first having the benefit of the trial court's fact finding process on the issue of the best interest of the child. The trial court had the opportunity to observe the mother, the prospective adoptive parents, and the other individuals who will be in a familial relationship with Jennie L. depending upon her ultimate placement. No cold record of testimony can fully demonstrate the strengths and weaknesses of the alternative placements.

## III. Fraud or Duress

Appellants also attack the judgment on the ground that there was no finding of fraud or duress in connection with obtaining the mother's consent. Appellants contend that before consent may be withdrawn it must be shown that it was obtained by fraud and duress, and that the adoptive parents had knowledge of such fraud and duress.

There was no evidence of fraud or duress by either the adoptive parents or the adoption services. The only evidence of duress related to the

actions of Diane's parents, particularly her father. There was substantial evidence of oppressive behavior on his part, including anger, physical abuse, efforts to obtain an abortion, and efforts to induce Diane to place her child for adoption. However, the superior court found in connection with the earlier habeas corpus proceeding that the consent was valid.[5] Moreover, the trial court in this proceeding did not purport to find that the duress was of such a character as to nullify the consent. Although the trial court considered the father's actions and their effect on Diane, it is quite evident that his behavior was considered in relation to the reasonableness of Diane's attempt to withdraw consent rather than for purposes of invalidating the consent.

■ Fraud or duress practiced by the adoptive parents or known to them may constitute grounds for invalidating consent. (See *Hall* v. *Department of Adoptions* (1975) 47 Cal.App.3d 898, 903-904 [121 Cal. Rptr. 223].) In *Hall* the court dealt with a mother who sued to set aside a relinquishment under section 224m. The court recognized that even a relinquishment may be invalidated by proof of fraud or duress, but, because of the strong legislative policy expressed in 224m in favor of giving continued effect to relinquishments, held that allegation and proof of fraud or other wrongful conduct are necessary for rescission.

In *Guardianship of Baby Boy M., supra,* 66 Cal.App.3d 254, 271-272, this court held that the *Hall* reasoning has no application to a section 226a proceeding to withdraw consent. Justice Tamura, writing for a unanimous court stated in part: "If the criteria of 'reasonable in view of all the circumstances' and 'best interests of the child' in section 226a are read to embrace withdrawal of consent only upon proof of fraud or duress, the section becomes nugatory....A principal purpose of section 226a is to permit natural parents to withdraw a consent to adoption if it is reasonable and in the best interests of the minor. Were we to adopt appellant's interpretation of the statute, it would render section 226a superfluous. This we decline to do."

We again reject that interpretation of the statute advanced by appellants.

---

[5]Although the superior court order denying the writ is not res judicata in the broad sense that it bars further proceedings for custody, a petitioner may not again litigate the issues of fact decided in the superior court unless there has been a change of circumstances. (See *In re Richard M.* (1975) 14 Cal.3d 783, 790-791 [122 Cal.Rptr. 531, 537 P.2d 363].)

## IV.  Exclusion of Evidence

■  Appellants contend that the trial court committed reversible error by sustaining objections to two questions put to Diane by appellants' attorney. The exchanges were as follows:

"[MR. BRADSHAW] Q. How long had you known Mr. Camero prior to becoming pregnant?

"MR. HARMON: Objection, your Honor. Irrelevant.

"THE COURT: The relevance of that, Mr. Bradshaw?

"MR. BRADSHAW: The relevance of this, your Honor, I think the moral character of this young woman is very much an issue in terms of her fitness as a parent and particularly what would be in the best interests of the child.

"THE COURT: Objection is sustained." And later:

"MR. BRADSHAW: Q. At the present time, are you also dating? A. No.

"Q. Were you dating in November when your deposition was taken?

"MR. HARMON: Objection, your Honor. I don't believe it is relevant.

"THE COURT: Sustained.

"MR. BRADSHAW: Your Honor, could I be heard on that? I believe it's relevant to show that the entire course of activities of this witness are inconsistent with raising—rearing an infant child, and I think the fact that she is pursuing social activities, the fact that she is doing or planning to do the Lancerettes is inconsistent with that. I simply want to know if she has been dating and pursuing those activities.

"THE COURT: Objection is sustained."

There was no error of prejudicial proportions. Although minimally relevant, the questions were not of a nature to elicit any very significant information about Diane's character. The length of her acquaintance with the child's father before becoming pregnant, even if very brief, would add little to the information already available, i.e., that a child of 15 had become pregnant.

The second question is even less likely to produce probative evidence of any value to appellants. It would be expected that a young unmarried person of 16 or 17 would have social activities, and that some of them would involve dating members of the opposite sex.

There was ample evidence of the kind of person Diane is and the kind of environment she can offer Jennie L. to enable the court to make a determination with respect to the child's best interests.

## V. Destruction of the Diary

Diane testified that after she learned of her pregnancy in April of 1978, and through November of 1978, she kept a diary which detailed all of the important events occurring in her life. She also admitted in response to a question that it may have contained notations about her intentions about the adoption and her father's coercive actions. After she had disclosed the existence of the diary at her first deposition, both Diane and her attorney agreed to make the diary available to the judge at the time of the hearing on the writ of habeas corpus in November of 1978. The diary was not produced and Diane later burned the diary.

Appellants contend that this action of Diane's, standing alone, justifies reversal of the judgment. Appellants point out that the wilful destruction of evidence constitutes a crime (Pen. Code, § 135), and cite *Handley v. Guasco* (1958) 165 Cal.App.2d 703, 709 [332 P.2d 354], for the principle that "'[t]he inference which arises from proof of intentional destruction is that the truth which would have conclusively appeared from the production of such evidence would have operated against the despoiler.'"

Appellants then contend that because of the sensitive nature of this case and the importance of such evidence, presumably Diane's state of

mind, the trial court should have found against her on the basis of the intentional destruction of the diary.

What appellants overlook is that the court in the habeas corpus proceeding in which the diary was to have been produced did rule against her. The diary could have done her no further harm in that proceeding. Moreover, the determination that the consent was valid has not been upset. In the present proceeding the court simply considered all of the circumstances of the consent in determining the reasonableness of the withdrawal.

The diary would have been of little probative value on that issue. Even assuming that it would have operated against Diane, i.e., that the diary contained a statement of her affirmative intent to consent to the adoption, this would simply be a written report of what has already been demonstrated by her actions, that during this period she was highly ambivalent about the consent to adoption.

Since the diary would have been of such slight evidentiary value, appellants' argument seems to suggest that the trial court should have denied Diane's petition as punishment for her action in destroying the diary. We reject the notion that punishment should play any part in the court's consideration of the issues presented.

Although Diane's action in destroying the diary is a fact that may be considered by the court in assessing her maturity as it may relate to her ability to accept responsibility for her child, it would be highly inappropriate for the court to permit that single act to control, or even to significantly influence, its decision.

For the reasons herein stated, the judgment is reversed and remanded to the trial court with directions to determine on the basis of evidence already submitted whether withdrawal of consent will be for the best interests of the child, and enter judgment accordingly.

It is not intended by this direction to prohibit the court's taking such evidence as it deems necessary relating to circumstances occurring subsequent to the hearing. It is the intention of this court that the matter

should not be retried, with all of the delays inherent in such procedure which this court finds would not be in the best interest of the child Jennie L.

Gardner, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied November 18, 1980.