[No. A033582. First Dist., Div. Four. Dec. 31, 1987.]

Adoption of CHRISTOPHER S. et al., Minors.
DENNIS S., Plaintiff and Appellant, v.
MARTIN T., Defendant and Respondent.

COUNSEL

Craig R. Morey for Plaintiff and Appellant.

Jeffrey S. Cost and John A. Cost for Defendant and Respondent.

OPINION

**SABRAW, J.**—Appellant and natural father Dennis S. appeals from a judgment ordering the adoption of his two minor children by their stepfather. He argues: (1) the trial court failed to make a finding of "detriment" as required by Civil Code section 4600;[1] (2) the facts are insufficient to support the trial court's findings under section 224; and (3) the wishes of the children were not addressed pursuant to section 4600. We hold that section 4600 is not applicable to adoption proceedings under section 224 and affirm the judgment of adoption.

## I.  FACTS AND PROCEDURE

Lucille T., the natural mother of the children in question, divorced appellant, Dennis S., in 1976. She was awarded custody of their two minor children, as well as child support. In 1983 she married the petitioner in this action, Martin T.

On February 28, 1985, Martin T. filed a petition for a stepparent adoption. Lucille T. filed a consent form to the adoption. (§ 226.1.) Petitioner alleged, pursuant to Civil Code section 224, that the consent of Dennis S. was unnecessary because he had failed to support his two children for a one-year period, and had also failed to communicate with them during that period.

At the hearing on the petition Lucille T. testified that she had received no child support from March of 1983. She also stated that for a year prior to the filing of the petition appellant had had no real contact with the children. He had come over once for about 15 minutes to sell a "hot" 10-speed bike to her husband. The next time he came to say he was going to prison. However, he was drunk and passed out on the couch. The children were in bed by the time he woke up. He had no further contact with the children until Lucille T. sent him a letter telling him about the adoption and what

---

[1] Unless otherwise indicated, all further references are to the Civil Code.

they had to prove if he did not consent. After this he sent the children a Christmas card and a letter.

The judge found that Dennis S. had willfully failed to support his children for a one-year period. He took into account the fact that he had been incarcerated and thus unable to pay, but stated that even for a year prior to incarceration he had failed to send support. He also found a "willful failure to communicate" stating the contacts shown were "a rather apathetic attempt to communicate or contact the children" and did not convince him appellant was committed to being "a caring, loving natural parent." After finding Dennis S.'s consent was unnecessary, he proceeded with the stepparent adoption.

## II. ANALYSIS

### A. *Applicability of Civil Code Section 4600.*

■ Appellant argues the trial judge failed to make a finding of "detriment" as required by Civil Code section 4600. Section 4600, subdivision (c) provides, "Before the court makes *any* order awarding custody to a person or persons other than a parent, *without the consent of the parents,* it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child." (Italics added.) No such finding was made here.

However, section 224 provides, "A child having a presumed father under subdivision (a) of Section 7004 cannot be adopted without the consent of its parents if living; *however, if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents, and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of the child when able to do so, then the parent having custody alone may consent to the adoption . . .;* failure of a parent to pay for the care, support and education of the child for the period of one year or failure of a parent to communicate with the child for the period of one year is prima facie evidence that the failure was willful and without lawful excuse . . . ." (Italics added.)

Section 4600 clearly exempts situations in which the parents consent. When a parent has consented to an adoption he or she "gives up the parental preference otherwise applicable under section 4600." (*Adoption of Jennie L.* (1980) 111 Cal.App.3d 422, 429 [168 Cal.Rptr. 695].) However, what is not clear is whether the phrase "without the consent of the parents" found in section 4600 covers situations in which one parent's consent has been found to be *unnecessary* by operation of statute, here section 224.

Section 4600 has been applied in a number of other contexts. In *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244] the California Supreme Court stated that before the trial court could make an order under former Welfare and Institutions Code section 600 (now § 300) declaring a child to be a dependent child of the court, it would have to make a finding that an award to the parent would be "detrimental" to the children. The court emphasized the importance of awarding custody to parents over non-parents. (*Id.* at pp. 697-699.)

Later, in two cases, *In re Carmaleta B.* (1978) 21 Cal.3d 482 [146 Cal.Rptr. 623, 579 P.2d 514] and *In re Richard E.* (1978) 21 Cal.3d 349 [146 Cal.Rptr. 604, 579 P.2d 495], the court held the parental preference concept under section 4600 applicable to proceedings under Civil Code section 232, subdivisions (a)(2), (a)(4) and (a)(6). Section 232 deals with proceedings in which, under certain specified circumstances, children are declared free from parental custody and control. For example in *Carmaleta B.* the children had been declared free from the mother's custody and control under section 232, subdivisions (a)(2) (child neglected or cruelly treated) and (a)(6) (parent mentally disabled). *Richard B.* dealt with subdivision (a)(4) (parents convicted of a felony). The court, citing *In re B.G.,* held a finding of "detriment" under section 4600 was required before the parents could be deprived of custody.

Then in *In re Baby Girl M.* (1984) 37 Cal.3d 65 [207 Cal.Rptr. 309, 688 P.2d 918], the court held section 4600 applicable to all section 7017, subdivision (d) termination proceedings. In *Baby Girl M.* Edward (petitioner) and the baby's mother had dated during the fall of 1980. The relationship ended in November without them knowing she was pregnant. After having the baby she immediately gave it up for adoption. Edward did not find out about the child until August 1, 1981. On August 10 a section 7017, petition was filed to terminate Edward's parental rights. At the hearing on the petition the judge found him to be the biological father, but also found it to be in the best interests of the child to remain with adoptive parents. No finding of detriment was made. (*Id.* at p. 68.)

However, the California Supreme Court held "the trial court erred by applying the best-interests-of-the-child standard without first determining whether granting custody to the natural father would be *detrimental*." (*In re Baby Girl M., supra,* 37 Cal.3d at p. 75.) The court first reviewed the Uniform Parentage Act found in sections 7000 and following, explaining that it "sets forth various procedures by which the relationship of parent and child may be established" and "gives the natural father a right he did not previously possess: the right to notice of the hearing to terminate his parental rights" when the mother relinquishes the child for adoption. (*Id.* at

p. 69.) In this way his custodial rights can be determined before the adoption proceeds. Under section 7017, subdivision (d), if the father is not found to be the natural father, or if he is the father, the adoption is in the child's best interest, "it shall order that that person's consent is not required for an adoption." However as just mentioned, the court imposed the *additional* requirement that "detriment" be found.

It might appear at first glance that the language and reasoning found in *Baby Girl M.* would apply to proceedings under section 224.[2] However, *Baby Girl M.* was followed by *Michael U.* v. *Jamie B.* (1985) 39 Cal.3d 787 [218 Cal.Rptr. 39, 705 P.2d 362]; here three concurring justices called for the overruling of *Baby Girl M.* In 1986 the Legislature did just that by amending section 7017 to state, "[s]ection 4600 does not apply to this proceeding."

Due to the relationship and overlapping between the two sections, we find no reason to require such a finding at a section 224 hearing.[3] The California Supreme Court has not so held, nor has the Legislature indicated the detriment standard applies to section 224 hearings.[4]

---

[2] In making its holding, the court also stated, "Our interpretation is also consistent with the public policy which led to the Uniform Parentage Act and other relevant civil code sections. Sections 221-230 set forth the mechanisms for adoption. Sections 232-240 contain the applicable law on freeing a minor from parental custody and control. Read together with the Uniform Parentage Act, the following statutory scheme emerges. [¶] Under section 197, both mothers and presumed fathers are *entitled* to custody of their minor children. An adoption can proceed *only* if their consent has been given or their parental rights have been terminated pursuant to a section 232 or section 224 hearing. The mother and presumed father are equally entitled to the child's custody; therefore his consent is necessary before the child may be adopted." (*In re Baby Girl M., supra,* 37 Cal.3d at pp. 71-72.)

[3] One might be tempted to argue section 224 is more closely related to section 232, subdivision (a)(1). This section provides that a child may be freed from parental custody and control if "[t]he child has been left without provision for the child's identification by his or her parent or parents or by others or has been left by both of his or her parents or his or her sole parent in the care and custody of another for a period of six months *or by one parent in the care and custody of the other parent for a period of one year* without any provision for the child's support, *or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child.*" Yet the two sections appear distinguishable. Under section 224 *both* lack of support and communication must be found. Furthermore, section 224 is a narrow statute addressed to a particular situation, namely stepparent adoptions. One parent *must* have custody for this section to apply. The situation would be different if the child was to be placed completely with nonparents. (See *Adoption of Rebecca B.* (1977) 68 Cal.App.3d 193, 199-200 [137 Cal.Rptr. 100].) As was explained in *Rebecca B.,* a case dealing with the notice rights of illegitimate fathers, such a father retains some rights under section 4600. For example, if the mother were to die pending finality of the adoption proceedings, he might be entitled to custody over a nonparent (i.e., stepparent.) (*Ibid.*) Lastly, the application of section 4600 to this section has also been called into question. (*In re B. J. B.* (1986) 185 Cal.App.3d 1201 [230 Cal.Rptr. 332].)

[4] Although the Legislature did not amend section 224 when it amended section 7017, we cannot assume from their failure to act that section 4600 is applicable to section 224. In

We begin by noting that both sections 7017 and 224 deal with adoption and whether a finding of consent by the father is necessary before that adoption proceeds.

Section 7017, subdivision (d) deals with "natural fathers," those who do not meet the criteria found in section 7017, subdivision (a). These fathers are given a hearing under subdivision (d) to determine first if they are the biological parent, and if so, if it is in the best interests of the child that the father retain parental rights. If the "best interests" factor is found in favor of the father, his consent is necessary for an adoption. Otherwise it is not. As previously stated, the section 4600 finding of detriment is expressly *not* to be considered for adoption pursuant to this section at this hearing.

Section 224 deals with "presumed fathers." This term is defined in section 7004, subdivision (a), and basically includes fathers who are married or have attempted to marry the mother, or who have taken the child into their home. A presumed father must consent to the adoption, or as outlined above, his consent must be found to be unnecessary. (See *Adoption of Marie R.* (1978) 79 Cal.App.3d 624, 627-628 [145 Cal.Rptr. 122]; § 224; § 7017, subd. (a)(1).)[5] Other than consent the issue in stepparent adoptions has been what is in the "best interests" of the child. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 16 [101 Cal.Rptr. 541, 496 P.2d 453]; *In re Jay R.* (1983) 150 Cal.App.3d 251, 258 [197 Cal.Rptr. 672]; cf. *Adoption of Duckett* (1975) 48 Cal.App.3d 244 [121 Cal.Rptr. 574]; § 227.) No case has yet imposed a requirement that "detriment" additionally be found.

A reading of subdivision (c) of section 4600 and the cases construing it suggest why. Cases such as *In re B. G.* and *In re Baby Girl M.* deal with situations in which the child is *completely taken* from parental custody. In stepparent adoption proceedings the child must *already be* in the custody of one of the parents. The child is not being completely placed with nonparents. Thus custody is not directly at issue. In fact the presumed father, Dennis S., never alleges he is seeking custody of the children. This is not the

amending section 7017 the Legislature meant to explictly overrule *Baby Girl M.* The question of applying section 4600 to section 224 had never arisen, thus they had no reason before them for amending section 224.

Also, section 224 is a very old statute, originally enacted in 1872. Section 227, which sets forth the "best interests" of the child standard was also enacted at that time. The provision in question here, deeming the consent of the father unnecessary, was added in 1933. However, section 4600 was not enacted until 1969 as part of the "Family Law Act." At that time no changes were made either to section 224 or 227. The "best interests" standard is still applicable.

[5] This is also confirmed by the last sentence of section 7017, subdivision (d)(2) which states, "Nothing in this section changes the rights of a presumed father."

purpose of a section 224 hearing. (Cf. *Adoption of Jennie L., supra,* 111 Cal.App.3d 422, 429, fn. 4.) Furthermore, a finding of detriment would appear to be redundant since section 224 ". . . is fashioned for the situation where the other natural parent has been guilty of conduct tantamount to abandonment of the child or which is destructive of the parent-child relationship." (*Adoption of Duckett, supra,* 48 Cal.App.3d at p. 248.) We see no reason to extend the applicability of section 4600 to section 224 hearings.

### B. The Requirements of Section 224 Were Met.

■ Appellant also argues that the trial court improperly found he had "willfully" failed to support and communicate with his children. Relying on *Adoption of Coffee* (1976) 59 Cal.App.3d 593 [130 Cal.Rptr. 887], he claims the fact that he was in prison shows any failure to pay support was not willful. As for lack of communication, he points to the two visits and Christmas cards.

*Coffee, supra,* also involved a stepparent adoption. As here the mother had consented but the father, who was then incarcerated, refused to consent. The father had been ordered to make child support payments in 1968, and had failed to do so up to the time of the petition for adoption in 1975. He had been incarcerated since 1971. The appellate court held the trial court improperly found the failure to pay child support "willful" because "[t]he evidence here does not support an inference that appellant committed the felonies for which he was incarcerated for the purpose of avoiding the obligation to pay for the support of his son." (*Adoption of Coffee, supra,* 59 Cal.App.3d at p. 599.)

The issue of whether *Coffee, supra,* was applicable was before the trial judge at the section 224 hearing. However, he found the case distinguishable, as do we. In *Coffee* the appellate court was dealing with the specific finding of the trial court " 'that by reason of his [i.e. respondent's] conduct before September, 1971, and as a direct and proximate result thereof, he became incarcerated and, therefore, his lack of possession of the money with which to pay for the support or contribute to the support of the minor child was willful as that term is used in section 224 of the Civil Code.' " (*Adoption of Coffee, supra,* 59 Cal.App.3d at pp. 598-599.)

Here the judge stated, "I distinguish Coffee on the grounds that evidence here shows that the respondent, Dennis S., *at a time when he was able,* did not support and there's no evidence that he was unable to, and I think his failure to support was willful and there's been a year of willful failure to support the children . . ." In other words the trial judge did not infer, as in *Coffee,* that because the father willfully committed a criminal act leading to

incarceration, he therefore willfully failed to pay child support. Furthermore, the failure to pay need not be the year immediately prior to the filing of the petition. (*Adoption of Smith* (1969) 270 Cal.App.2d 605, 608 [75 Cal.Rptr. 900]; *Adoption of Burton* (1956) 147 Cal.App.2d 125, 136 [305 P.2d 185].) The judge here specifically excluded this period in making his findings.

Nor do we find meritorious defendant's argument that his two visits and Christmas cards constituted communication with the children.[6] The record suggests he did not even see the children on these occasions. Furthermore, the judge could have inferred the Christmas card was sent to frustrate the adoption proceedings since it was sent after the children's mother informed Dennis S. of what they were doing and planned to prove. We therefore hold the judge properly found the requirements of section 224 were met.[7]

The judgment is affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.,** Dissenting—The majority opinion has substantial internal tensions. First we are told that neither the California Legislature nor the California Supreme Court meant to speak broadly when they used such terms as "[i]n *any* proceeding" (Civ. Code, § 4600, subd. (a), italics added)[1] or a "uniform rule" (*In re B. G.* (1974) 11 Cal.3d 679, 696 [114 Cal.Rptr. 444, 523 P.2d 244]). But in the next breath we are told that the Legislature meant to speak very broadly when it enacted a minute amendment correcting a small problem.

In my opinion broad language should be interpreted broadly and narrow language should be interpreted narrowly. Since I have the California Supreme Court on my side, I dissent.

Section 4600 speaks in universal terms: "Before the court makes *any order awarding custody to a person or persons other than a parent,* without

---

[6] Appellant argues the finding required must be tantamount to an "abandonment" as found in section 232(a)(1). However "[t]he actions which may cause a parent to lose his or her right to withhold consent to the adoption may be 'tantamount to abandonment' but 'abandonment' within the meaning of section 232 is *not* an issue in a stepparent adoption pursuant to section 224." (*In re Jay R., supra,* 150 Cal.App.3d 251, 258.)

[7] Because of our conclusion in part I of this opinion, we do not reach appellant's third argument that the court did not give due weight to the consideration of the children as required by section 4600.

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child." (*Id.,* subd. (c), italics added.)

It is not surprising that right from its first authoritative interpretation of section 4600, *In re B. G., supra,* 11 Cal.3d 679, the California Supreme Court has recognized the universal applicability of the statute in custody proceedings. It tells us, "There can be no question of the desirability of a uniform rule; the Legislature's specification that section 4600 applies to 'any proceeding where there is at issue the custody of a minor child' demonstrates that section 4600 was enacted to fulfill that objective." (*In re B. G., supra,* 11 Cal.3d at p. 696, fn. omitted.) Although the case before it concerned a custody order in a dependency proceeding (former Welf. & Inst. Code, § 600 et seq. [repealed by Stats. 1976, ch. 1068, § 20, p. 4782; see now, Welf. & Inst. Code, § 300 et seq.] the high court deemed that procedural setting to be "fortuitous." (*In re B. G., supra,* at p. 695.) The court explained that the issue could have "as readily have been raised" in any number of settings such as an application for letters of guardianship, a writ of habeas corpus, an action for dissolution of marriage or in any one of "at least eight separate proceedings in which custody questions can be litigated." (At pp. 695-696, citing Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law* (1971) 23 Stan.L.Rev. 703, 704-705.)

So strong has been the bent to universal application of the universal language that the California Supreme Court has found section 4600 applicable to a section 7017 proceeding involving a biological but not presumed father. (*In re Baby Girl M.* (1984) 37 Cal.3d 65, 75 [207 Cal.Rptr. 309, 688 P.2d 918].) That application and only that application of section 4600 has been changed by amendment—and by amendment not to section 4600, but to section 7017. Put simply the law now is that a finding of detriment is a statutory prerequisite to any order awarding custody to a person other than a parent, except in proceedings brought under section 7017, i.e., proceedings involving natural fathers or persons claiming to be natural fathers. The detail and precision with which the Legislature cut out this sole exception are worth examining.[2] But those who want a short answer need only read

---

[2]Subdivision (d)(2) of section 7017 provides: "If the natural father or a man representing himself to be the natural father claims parental rights, the court shall determine if he is the father. The court shall then determine if it is in the best interest of the child that the father retain his parental rights, or that an adoption of the child be allowed to proceed. The court, in making that determination, may consider all relevant evidence, including the efforts made by the father to obtain custody, the age and prior placement of the child, and the effects of a change of placement on the child. If the court finds that it is in the best interest of the child that the father should be allowed to retain his parental rights, it shall order that his consent is necessary for an adoption. If the court finds that the man claiming parental rights is not the father, or that if he is the father it is in the child's best interest that an adoption be allowed to proceed, it shall order that that person's consent is not required for an adoption; such a

the last two sentences of subdivision (d)(2) of section 7017: "*Section 4600 does not apply to this proceeding. Nothing in this section changes the rights of a presumed father.*" (Italics added.) Thus the Legislature understood the difference between natural and presumed fathers and drew the distinction: for the former class, section 4600 does not apply, to the latter, it does. Nothing could be simpler.

It should require no more to decide the instant case than to point out that it is a section 224—not a section 7017, subdivision (d)(2)—proceeding and therefore section 4600 applies.

But that simple conclusion would underestimate the majority's disagreement with the entire line of California Supreme Court decisions following *In re B. G.* which reaffirm the need for a universal rule in all custody matters involving a minor child. (See, e.g., *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 791-792 [218 Cal.Rptr. 39, 705 P.2d 362]; *In re Carmaleta B.* (1978) 21 Cal.3d 482, 495-496 [146 Cal.Rptr. 623, 579 P.2d 514]; *In re Richard E.* (1978) 21 Cal.3d 349, 356-357 [146 Cal.Rptr. 604, 579 P.2d 495].) Some dictumized evidence of this disagreement is the earlier expression by a majority of this exact panel in *In re B. J. B.* (1986) 185 Cal.App.3d 1201 [230 Cal.Rptr. 332], wherein they made plain their disapproval of the holdings of a unanimous California Supreme Court in *Carmaleta B.* and *Richard E.*[3] What particularly distressed my two colleagues on that occasion was the determination by the high court in those cases that section 4600 applied to section 232 proceedings. (See *In re B. J. B., supra*, at pp. 1205-1209.) That distress continues here. For example, the lead opinion points out that the application of section 4600 to section 232 "has also been called into question," citing *In re B. J. B.* (See majority opn., *ante*, p. 438, fn. 3.)

The tack taken by the majority here to avoid application of section 4600 to the instant case is to find a "relationship" and an "overlapping" (majority opn., *ante*, p. 438) between the statute involved here—section 224—and the statute making the sole exception to the section 4600 requirement, section 7017, subdivision (d)(2). The notion is supposedly amendment by osmosis.

The most succinct response is that no matter how related or overlapping the two statutes may appear, the Legislature has seen fit to change only one

---

finding terminates all parental rights and responsibilities with respect to the child. Section 4600 does not apply to this proceeding. Nothing in this section changes the rights of a presumed father."

[3] Although there was a dissent in *Richard E.*, joined in by two other justices, those three agreed with the majority that section 4600 applied to the section 232 proceedings. Thus, it was a unanimous Supreme Court on the point which disturbs my colleagues.

of them, section 7017, subdivision (d)(2), and has accomplished that change with the precision of a corneal laser surgeon using the detail of an engraver of the United States Mint. (See fn. 2, *ante*.) Where a statute (like § 7017, subd. (d)(2)) expresses an exception to a general rule (e.g., § 4600, subd. (c)) other exceptions are not to be implied or presumed. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537]; *Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 258 [220 Cal.Rptr. 2], cert. den., 476 U.S. __[90 L.Ed.2d 648, 106 S.Ct. 1962].) The Legislature excepted section 7017, subdivision (d)(2) cases from the rule of section 4600 and told the world that that was the only exception being made. We have no power to make other exceptions.

In summary, the plain English of section 4600 compels the conclusion that a finding of detriment must precede an award of custody to a nonparent. The even plainer English of each and every decision of the California Supreme Court reviewing section 4600 makes it clear as well that the high court understood the Legislature to mean *in any proceeding* when the Legislature said, "[i]n any proceeding." The sole explicit statutory exception has no application here. I would therefore find that the trial court erred in failing to consider section 4600 before making its order awarding custody to a nonparent, and would therefore reverse.

Appellant's petition for review by the Supreme Court was denied April 7, 1988.